(No. 2231— )

STANDARD FELT CORPORATION, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 13, 1935.*
*Rehearing denied December 14, 1937.*

GIBSON, DUNN & CRUTCHER and HENRY B. ELY, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

This claim was filed August 10, 1933 for the sum of One Hundred Eighty-seven Dollars and Forty-two Cents ($187.42). The claimant is a corporation organized under the laws of the State of California having its principal office in the City of Alhambra, California.

The declaration alleges that on January 22, 1927 the claimant applied to the Secretary of State of the State of Illinois for a certificate of authority to transact business in Illinois, and a certificate was duly issued by the Secretary of State, and that continuously since that time the claimant has complied with all the laws of this State in relation to the right

of foreign corporations to transact business in Illinois, and that claimant is engaged in the sale of felt goods within this State.

At the time of the application for certificate of authorization to do business in this State the claimant informed the Secretary of State that its issued stock was Eight Hundred Fifty Thousand Five Hundred Dollars ($850,500.00) consisting of Four Hundred Twenty-five Thousand Five Hundred Dollars ($425,500.00) of One Hundred Dollar ($100.00) par value common stock and Four Hundred Twenty-five Thousand Dollars ($425,000.00) of One Hundred Dollar ($100.00) par value preferred stock; that between February 1, and June 15, 1927. the Secretary of State notified claimant of an assessment for the annual franchise tax for the year of 1927, which assessment was computed on the entire capital stock of claimant, and upon the proportion thereof actually employed in the State of Illinois, and this assessment was the sum of Sixty-three Dollars and Fifty-four cents ($63.54) which was duly paid by the claimant.

It is further alleged that on December 31, 1927 the claimant retired five hundred shares of its preferred stock of a total principal value of Fifty Thousand Dollars ($50,000.00) or as claimant puts it, Fifty Thousand Dollars ($50,000.00) of the principal stock of the claimant corporation was, in accordance to the claimant's Articles of Incorporation providing for the redemption of its preferred stock, retired by the claimant, thus reducing its issued capital stock; that notice was given to the Secretary of State of this reduction of issued stock in claimant's annual report filed with the Secretary of State of Illinois, about the 10th day of February, 1928 pursuant to the law of Illinois relating to the determination and assessment of annual franchise tax.

It is also alleged that before the 15th day of June, 1928, the claimant was notified by the Secretary of State that the assessment for its annual franchise tax for the year 1928 was the sum of Seventy-six Dollars and Twenty-five Cents ($76.25) and that it was an over-assessment in the sum of Four Dollars and Forty-eight Cents ($4.48); that the last mentioned sum was paid to the defendant by mistake, due to the above mentioned error of the Secretary of State of the State of Illinois.

Averments similar in principal were made for the following years: 1928 wherein it was alleged the sum of Twelve Dollars and Ten Cents ($12.10) was overpaid; 1929 wherein it was alleged the sum of Forty-eight Dollars and Forty Cents ($48.40) was overpaid; 1930 wherein it was alleged the sum of Forty-two Dollars and Seventy-seven Cents ($42.77) was overpaid; 1931 wherein it was alleged the sum of Forty-one Dollars and Eighty-six Cents ($41.86) was overpaid, and 1932 wherein it was alleged the sum of Thirty-seven Dollars and Eighty-one Cents ($37.81) was overpaid.

It is further averred also that demand was made on account of such overpayments upon taxes levied by the Secretary of State of the State of Illinois for the above mentioned years, and the Secretary of State was requested to review these payments and correct the same and refund the monies paid by mistake to the Secretary of State and the Secretary of State advised the claimant that he would not refund the money so paid and referred the claimant to this court.

And because the claimant had reduced its issued capital stock on successive dates, different amounts for the different years are claimed as overpayments, and that each one of the years the Secretary of State was notified of the reduction but did not, in figuring the tax, take into consideration these successive reductions when he computed the franchise tax for those years, and that for the year 1929 an increase of capital stock over the original amount was considered, and the claimant contends that had the Secretary of State used the actual issued stock figure of which he had notice, there would have been no increase in capital stock tax due in 1930 and reliance is had upon Sections 105 and 106 of Chapter 32, of Cahill's Statutes for 1929. Said Section 105 provides that ''each corporation for profit, including railroads and except insurance companies, * * * shall pay an annual license fee or franchise tax to the Secretary of State of five cents on each one hundred dollars of the proportion of its issued capital stock * * *.''

And Section 106 provides that ''In ascertaining the amount of the issued capital stock represented by business transacted and property located in this State, the sum of the business of any foreign or domestic corporation transacted in this State and the total property of such corporation located within this State shall be divided by the sum of the

total business of the corporation, and the total property of the corporation wherever situated."

Nowhere in the declaration is it alleged that such payments by claimant were made under duress or protest. Other provisions of the statute are cited and relied upon by the claimant and several of the opinions of this court are cited and relied upon and more particularly the case of *The Caledonia Co.* vs. *State of Illinois,* 6 Ct. Cl. 176, 178 (1929) wherein this court said: "This court has held in numerous cases that when the facts show that a franchise tax was paid through an error in computation, or where the franchise tax was erroneously paid that the claimant is entitled to a refund of the franchise tax which was in excess legally due the State."

The declaration is not signed by counsel.

The Attorney General contends that the claimant did not discover the error hereinbefore referred to until about February 3, 1933 on which date the claimant made complaint to the Secretary of State for the overpayments in 1928, 1929, 1930, 1931 and 1932; that since the Secretary's attention has been called to the error of the reduction of the capital stock, the Secretary of State has acceded to claimant's request and did correctly base the franchise tax for the year 1933 on the issued capital stock of Four Hundred Twenty-five Thousand Five Hundred Dollars ($425,500.00).

It also appears from the file that the notice that was sent out annually by the Secretary of State suggested that if the claimant had any objection to the assessment that it should take the matter up with the Secretary of State Department within ten days, but no objections were ever made.

It seems that in the past this court has held that where it appears from undisputed facts that a franchise tax in excess of the amount due was paid through mutual mistake of fact an award will be made. (*Commercial Nat'l. Bank & Trust Co.* vs. *State,* 7 C. C. R. 122.)

This court also has held that where the amount of franchise tax is computed and collected by the Secretary of State in accordance with the law based upon information submitted by claimant, a claim for rebate of a part thereof alleged to have been excessive on account of error in information furnished by the claimant, will be denied. (*Seth Seiders, Inc.* vs.

*State,* 7 C. C. R. 9.) (*William Wrigley Jr. Co.* vs. *State,* 7 C. C. R. 153.)

Section eighty-five of Chapter 32 of the Corporation Act then in force provides that each foreign corporation admitted to do business in this State under the provisions of this or of any other section in addition to a copy of its charter, shall keep on file in the office of the Secretary of State, a duly authenticated copy of each instrument amending its charter.

While it is alleged in the declaration that the Secretary of State was in each instance notified of the reduction of the capital stock of the claimant, the provision of the statute last above mentioned does not appear to have been given consideration. The exact question before the court does not seem to have been heretofore presented to the court.

In the case of *Henry Yates, Insurance Superintendent,* vs. *Royal Insurance Company,* 200 Illinois 202, in the Supreme Court of this State, said on page 206:

"The mere fact that the Act under which the money was paid was unconstitutional, and the tax for that reason illegally laid, is not sufficient to authorize an action to recover back the amount paid. This principle has received the assent of the courts and law writers generally. Mr. Cooley, in his work on Taxation, (2d ed. p. 809), says: 'That a tax voluntarily paid cannot be recovered back, the authorities are generally agreed. And it is immaterial, in such a case, that the tax has been illegally laid, or even that the law under which it was laid was unconstitutional. The principle is an ancient one in the common law, and is of general application. Every man is supposed to know the law, and if he voluntarily makes a payment which the law would not compel him to make, he cannot afterwards assign his ignorance of the law as the reason why the State should furnish him with legal remedies to recover it back.' 'Money voluntarily paid to another under a mistake of the law, but with knowledge of all the facts, cannot be recovered back.' (18 Am. & Eng. Ency. of Law,—1st ed.—223.) This court has declared this same doctrine in numerous cases, among them being *Elston* vs. *City of Chicago,* 40 Ill. 514; *People* vs. *Miner,* 46 id. 374; *Swanston* vs. *Ijams,* 63 id. 165; *Union Building Ass.* vs. *City of Chicago,* 61 id. 439; *Walser* vs. *Board of Education,* 160 id. 272; *Otis* vs. *People,* 196 id. 542.

"Judge Dillon, in his work on Municipal Corporations, (3d ed. sec. 944), in discussing this question, states the law to be: 'Money voluntarily paid to a corporation under a claim of right, without fraud or imposition, for an illegal tax, license or fine, cannot, there being no coercion, no ignorance or mistake of facts, but only ignorance or mistake of the law, be recovered back from the corporation, either at law or in equity, even though such tax, license, fee or fine could not have been legally demanded and enforced.' And in Section 946: 'Where there is no mistake or fraud, a voluntary payment cannot be recovered on the mere ground that the one party was under no legal obligation to pay and the other had no right to receive. Where the

party would recover back taxes which it is under no legal obligation to pay, the payment must be compulsory."

There having been no compulsory means used to collect the taxes in question and complainant having failed to comply with Section 85 above referred to, we therefore hold that claimant is not entitled to recover in this instance, and the cause is dismissed.

ADDITIONAL OPINION ON PETITION FOR REHEARING.

MR. JUSTICE YANTIS delivered the opinion of the court:

Following the denial of an award in the above entitled cause by the opinion of the court, filed March 14, 1935, a Petition for Rehearing was filed. The original opinion was partly based upon claimant's purported failure to comply with the provisions of Section 85 of Chapter 32 of the Illinois Corporation Act, wherein corporations are required to file in the office of the Secretary of State, duly authenticated copies of amendments to their charters. Claimant's Petition for Rehearing calls attention to the fact that it was a foreign corporation, authorized by its original Articles of Incorporation to retire its stock without amendment, and that it had in fact filed notice with the Secretary of State of Illinois of its retirement of stock.

The claim presented a question which so far as the court is informed has not heretofore been passed upon in this State, i. e. as to whether capital stock of a corporation which is "retired" without an amendment of its charter is subject to a franchise tax? Assuming that Section 85 does not apply, the court is of the opinion that the further reasons assigned in the original opinion for denial of an award are sufficient. Section 112 of Chapter 32 of the GENERAL CORPORA-TION ACT, State Bar Statutes of 1929, provided that upon notice being given by the Secretary of State, notifying corporations of the amount of franchise tax assessed against them for the year next ensuing, that objections, if any, to such assessment would be heard, etc., upon request within ten days thereafter, with the further proviso for a continuance of such hearing for cause shown.

This court has held that neglect and failure upon the part of a corporation to observe such preliminary right of objection will preclude this court from making an award. The

record herein fails to disclose any objections as contemplated by such section, having been made by claimant, and the Petition for Rehearing is denied and the claim is dismissed.